IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

FILED
JAN 2 4 2002
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

ENTERED
JAN 2 4 2002

| | |
|---|---|
| DUDLEY A. HALL, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: CV-00-PT-3098-M |
| CANA, INC., et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This cause comes to be heard on defendant Cana, Inc.'s Motion for Summary Judgment filed on December 14, 2001.

### FACTS[1]

Plaintiff Dudley Hall ("Hall") was a truck driver employed by ProFleet. ProFleet contracted with defendant Cana, Inc. ("Cana"), to transport boxed cargo from Cana's facility in Americus, Georgia, to Homes by Oakwood ("HBO") in Ennis, Texas.[2]

On September 18, 1998, Hall arrived at Cana's facility in Americus. Hall was transporting "stiles" for Cana on this particular trip.[3] The stiles were packaged in bundles by Cana. These bundles consisted of stiles wrapped in cardboard and individually banded. These bundles were approximately eighteen inches high and twenty-four inches wide. Cana then banded together groups of bundles with metal or nylon banding. Cana loaded eight stacked

---

[1] Stated favorably to the plaintiff.

[2] Defendant Cana is a mobile home component parts manufacturer. Defendant HBO manufactures and sells mobile homes.

[3] "Stiles" are pieces of milled board between seven and eight feet long and ranging in thickness from one-half to several inches.

bundles of stiles banded together with three metal packaging bands onto ProFleet's flatbed truck. The stacks were arranged side by side in two columns, four bundles high. Cana's employees then inspected the load for safety and stability. Hall then secured the stiles with load securement straps and covered the cargo with a tarp. Before leaving for HBO's facility, Hall signed and received the bill of lading in which it stated that Hall accepted the subject property "in apparent good order" and "in proper condition for transportation." Hall then successfully delivered the cargo to HBO's facility.

After Hall arrived at HBO's facility, Jeff Houghtelling ("Houghtelling"), a forklift operator employed by HBO, came out to his flatbed trailer to unload the cargo. Hall removed the tarp and securement straps.[4] Houghtelling attempted to lift the stiles off the trailer bed. However, his attempt to lift the group of eight bundles was unsuccessful.[5] Apparently, the bundles could not be unloaded because the metal bands were holding all the bundles together. At this point, either Hall or Houghtelling cut the metal bands off the stacked bundles.[6] The bands were cut in an effort to remove the bundles in smaller groups. After the bands were cut,

---

[4] Hall testified in his deposition that it did not look like the load had shifted any during transportation.

[5] Hall gives this version of the events leading up to bundles falling off the flatbed trailer:

As far as I remember, I unstrapped the styles and maybe one pallet and some boxes, as far as I remember. . . . Next thing I know, he [Houghtelling] pulls his forklift up about middle ways of the load, tries to lift it. His forklift won't lift it. He sets it back down. If I remember correctly, I asked him if he had a bigger forklift, and he said no. He cuts the bands, then he was able to lift that portion of the load instead of the whole thing. He backs up, goes 20 yards toward the front of the trailer, or truck, and set it down, backs out from under it, gets off his forklift. At this time, he started checking all his paperwork. So, I had my paperwork in my back pocket at that time. I turned to walk towards him to let him check off my paperwork at the same time he checked his off. And when I turned my back to the load, the next thing I remember is something hit me from behind.

[6] It is disputed which individual actually cut the metal bands off the bundles. Hall testified in his deposition that he saw Houghtelling cut the bands. Houghtelling testified in his deposition that Hall cut all three metal bands. However, for purposes of this motion, Cana argues that this fact is not material.

2

several bundles fell off the trailer and struck Hall. Hall sustained injuries to his pelvis resulting in multiple surgeries.

### ARGUMENTS

Cana argues that it is entitled to summary judgment for two primary reasons. First, it argues that it had no duty under contract law or otherwise to unload the product from the trailer. In support of this proposition, Cana states that none of its employees were involved in the unloading operation. Instead, its employees only placed the product on the trailer. Additionally, Cana notes that it did not give any instructions or specifications as to how the bundles should be unloaded. Finally, it contends that it did not supervise or instruct Hall or HBO as to how to unload the product.[7]

Second, it argues that for a shipper to be liable the shipment must contain a latent defect. *See Decker v. New England Public Warehouse, Inc.*, 749 A.2d 762 (Maine 2000). It states that the fact that the load shifted does not in and of itself provide sufficient proof of negligence on the part of the shipper. *See O'Brien v. Stores*, 1998 WL 1181252 (Mass. Super.). Cana contends that any defect was patent and capable of observation because Hall perceived that Cana's arrangement of the bundles was a "sloppy load." Notwithstanding this observation, Hall did not make Cana change the arrangement. Additionally, Cana notes that Hall either cut the metal bands or allowed Houghtelling to cut them. It claims that this change of condition was not within its control. Thus, it contends that it owed no duty to Hall to see that proper safety measures were taken under the circumstances. *See U. S. Steel Corp. v. McCraney*, 257 F.2d 457

---

[7] Cana also contends that this is a premise liability case. *See Burry v. Eustis Plumbing and Heating, Inc.*, 243 F.3d 432 (8th Cir. 2001). As such, it argues that it had no obligations to unload Hall's trailer because the accident happened on HBO's premises and was not within the control of Cana.

(5th Cir. 1958).

Hall makes three main arguments in response. First, he argues that Cana's motion should be denied because of a procedural defect. Hall asserts that Cana has failed to offer one case of controlling law in support of its motion. According to Hall, the controlling law in this case is the law of Texas. It notes that Cana only cites authority from Maine, Massachusetts, and the Fourth Circuit. Consequently, it concludes that Cana has not met its burden to establish that it is entitled to summary judgment.

Second, Hall argues that Cana is not entitled to judgment as a matter of law because Cana was under a duty to properly and safely load its product onto the ProFleet trailer. *See C & H Nationwide, Inc. v. Thompson*, 810 S.W.2d 259, 266 (Tex. App. 1991), *rev'd in part on other grounds*, 903 S.W.2d 315 (Tex. 1994). According to Hall, the concept of duty in Texas "has been expanded to the point that often the mere knowledge of a risk of harm to another, which may be avoided with little inconvenience, imposes a duty of care." *Nationwide*, 810 S.W.2d at 266. Hall asserts that Texas has repeatedly recognized that a duty to use reasonable care arises when a person undertakes to provide services to another, either gratuitously or for compensation. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000). Additionally, Hall claims that a duty also exists under Texas law when a defendant has undertaken to inspect the specific instrument causing the injury. *See Johnson v. Abbe Engineering Co.*, 749 F.2d 1131, 1133 (5th Cir. 1984). Hall explains that his claims against Cana arise from their conduct in loading the trailer, not from unloading it. He notes that it is undisputed that Cana's employees were the only ones involved in banding the bundles and loading the trailer. Hall also states that he and

4

Houghtelling had never seen Cana stack the bundles four high.[8] Further, he explains that Cana also undertook to inspect the load, after it loaded it, for its safety and stability. Consequently, Hall claims that under Texas law, Cana owed him a duty in loading the trailer to exercise reasonable care. *See May v. Wal-Mart Stores, Inc.*, 1997 U.S. Dist. LEXIS 16556 (N.D. Tex. 1997).

Third, Hall argues that he does not have to prove a latent defect to establish liability. He contends that the authority cited by Cana in support of this proposition is inapplicable. Hall asserts that the *Decker* case deals with a Maine state law and its applicability to a load which fell in transit. He notes that decision in *Decker* was based in part on the Fourth Circuit's opinion in *United States v. Savage Truck Line, Inc.*, 209 F.2d 442 (1953), which held that when the shipper assumes the responsibility of loading, the general rule is that he becomes liable for defects that are latent and concealed and cannot be discerned by ordinary observation. *See Decker*, 749 A.2d at 766. Hall comments that the rule established in *Savage* has not been cited or adopted in any Fifth Circuit, Eleventh Circuit, or Texas case. Instead, Hall claims that Texas law is clear that even if the danger was open and obvious, it does not affect Cana's duty to warn. *See EDCO Prod., Inc. v. Hernandez*, 794 S.W.2d 69, 75 (Tex. App. 1990).

Although Hall contends that *Decker* and *Savage* are not controlling, he claims that there is evidence that a latent defect existed which was both created and known by Cana. In support of this proposition, Hall asserts that Cana's shipping supervisor testified that the bands were not to be cut while the product was on the truck. Hall claims that Cana knew the materials could not

---

[8] Houghtelling testified that the usually load from Cana would be two deep by two wide banded together.

5

be unloaded safely if the bands were cut.[9] Despite this knowledge, Hall states that Cana failed to warn him or HBO that the bands holding the bundles together were not to be cut until the product was unloaded.[10] Further, Hall notes that the danger of cutting Cana's bands is apparently not known in the industry. He explains that Cana's expert has testified that the banding used was to organize the materials for packaging and that it was not unreasonable to cut the bands while the product was on the truck. Hall also notes that Dennis Gloeckner, the materials supervisor with authority over the forklift operators at HBO, has testified that it was common practice for forklift operators to cut bands that are involved in shipments received. Finally, Hall states that he did not know that cutting the bands was dangerous at the time they were cut. Thus, he claims that there is substantial evidence that a latent defect existed.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed during the pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

---

[9] Cana's shipping supervisor, Janet Beasley, was responsible for inspecting the load for safety and stability. Hall contends that Beasley knew that the metal bands were not supposed to be cut prior to the product being unloaded:

> Q. Why are the bands put there?
> A. To hold the material together till it's unloaded.
> Q. Are the big bands around the big bundles there to keep it safe?
> A. To keep the two stacks together so it can be unloaded and –
> Q. And loaded?
> A. And loaded, right.
> Q. Safely?
> A. Right.
> Q. And so his cutting the bands created an unsafe condition?
> A. I would think so. I am not a genius, but I would think so. I wouldn't do it.

[10] Cana's General Manager, Deborah Ward, testified in her deposition that she had not communicated to HBO that the metal bands were not to be cut off the bundles.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Id.* The non-moving party then bears the burden of showing that there are specific facts demonstrating that there is a genuine issue of fact for trial. *Id.* at 324. "When deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). The trial court must resolve all reasonable doubts in favor of the non-moving party, but need not resolve all doubts in a similar fashion. *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

## CONCLUSIONS OF THE COURT

The court concludes that the motion should be denied. The defendant apparently had some duty with regard to the loading of the stiles. The court cannot determine, as a matter of law, what the standard of safety was. Pertinent evidence at trial may include evidence of the standard methods of such loading, the plaintiff's prior knowledge and experience with regard to such loads, prior notice to the defendant, etc.

This 24 day of January 2002.

ROBERT B. PROPST
**SENIOR UNITED STATES DISTRICT JUDGE**